United States District Court
Southern District of Texas
**ENTERED**
October 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TEXAN WIRE WHEELS, LLC, *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:26-cv-6914 |
| | § | |
| JOHN DOES 1-100, *et al.*, *Defendants*. | § | |

**JUDGE PALERMO'S**
**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff's *ex parte* application for a temporary restraining order, seizure order, and order to show cause why a preliminary injunction and seizure order should not issue. Pl.'s Mot., ECF No. 2.[1] In addition, Plaintiff seeks a preliminary injunction enjoining Defendants from manufacturing, distributing, selling or holding for sale any infringing merchandise, and a seizure order that authorizes law enforcement to seize infringing merchandise. ECF No. 2. Based on review of the briefing and applicable law, the Court recommends that Plaintiff's motion for TRO and seizure order be granted as set forth below.

## I. BACKGROUND

Plaintiff "Texan Wire Wheels, LLC specializes in the manufacture, promotion, and sale of wire wheels for motor vehicles, vehicle accessories as well

[1] On September 16, 2026, the district judge assigned to this case referred all pretrial matters. Order, ECF No. 7.

as, clothing, buttons, keychains and caps containing the images, trademarks, service marks and trade dress of Plaintiff's Products and Merchandise." ECF No. 1 at 1–2. "Plaintiff is engaged in the manufacture, distribution and sale of various types of merchandise sold and distributed from its own and affiliated websites and online retail stores, promotional events and car shows including but not limited to, vehicle wheels, wheel caps, clothing, hats and novelty items (collectively "Products and Merchandise") which contain the trademarks, service marks, trade dress, likenesses, logos and other indicia of affiliation with or origination from [Plaintiff]." ECF No. 1 at 2. Defendants are unknown at this time. ECF No. 1.

Plaintiff started producing and selling "spoked protruding wire rims" on May 10, 2006. ECF No. 1 at 3. Plaintiffs' "rims were very popular throughout urban communities in America, particularly in Houston, Texas" and "[e]veryone from regular citizens to famous musicians and athletes purchased the rims" and "were also commonly displayed on vehicles during car shows such as Houston's Annual Los Magnificos Car Show, in famous artists' music videos, and prominently displayed in television broadcasts, such as the 'Beyonce Bowl' during the Christmas NFL Half-time Show that aired worldwide as recently on December 24, 2024." ECF No. 1 at 3. "Plaintiff advertised and distributed its rims throughout Houston, Texas, America, Canada, and Mexico, with the majority of its customers located in Texas, Louisiana, and California." ECF No. 1 at 4.

Plaintiff filed and obtained trademarks registration for its various rims. ECF No. 1 at 4. Plaintiff "is also the owner of and has registered and common law trade dress rights in and to the subject of Trademark Registration No. 5,204,602:



consisting of a three-dimensional configuration of a vehicle wheel featuring an arrangement of wire spokes emanating from a tire hub whereby one long and straight spoke is placed in-between two short and slightly curved spokes in a repeated pattern around the wheel." ECF No. 1 at 6.

Plaintiff "maintains strict quality control standards for all goods and services under the Texan Wire Wheels brand and trademarks," and "spends substantial resources in marketing and promoting the Texan Wire Wheels brand and trademarks as well as sells hundreds of thousands of dollars of goods and services bearing the Texan Wire Wheels brand and trademarks." ECF No. 1 at 4. Plaintiff's Marks "have acquired enormous value and recognition in the United States and elsewhere throughout the world, all of which inures to the benefit of Texan Wire Wheels." ECF No. 1 at 5.

Defendants, without Plaintiff's authorization, manufacture, distribute, sell, or

hold for sale "vehicle wheels, clothing, hats, jewelry, photographs, posters, key chains, scale wheel miniatures, and any other merchandise that infringe upon Plaintiff's Marks. Recently, Plaintiff's customers reached out to Plaintiff to determine whether Defendants' counterfeit products were authorized by Plaintiff and "[p]ursuant to its online monitoring, Plaintiff has discovered a massive increase in the deliberate use, production and sale of a variety of infringing products bearing and displaying Texas Wire Wheels, LLC's trademarks, trade dress and other intellectual property." ECF No. 1 at 8. Plaintiff alleged that:

> Defendants herein are not connected or affiliated with Texan Wire Wheels, LLC in any way, nor do Defendants have permission from Texan Wire Wheels, LLC to use any of its Trademarks or any other intellectual property belonging to Texan Wire Wheels. Rather, Defendants are blatantly exploiting the Texan Wire Wheels, LLC trade dress and trademarks for their own commercial gain, intending to confuse and deceive the public by drawing on Texan Wire Wheels' goodwill in the marketplace. By offering for sale the infringing products and services, Defendants intend to, and are likely to, cause confusion and to deceive consumers and the public regarding the source of Defendants' merchandise, all to the detriment of Texan Wire Wheels.

ECF No. 1 at 7–8. "Defendants will continue to sell and distribute unauthorized and infringing vehicle wheels, miniature wheels in scale, T-shirts, jerseys, caps novelty items and/or other merchandise bearing and displaying Texas Wire Wheels, LLC's trademarks, trade dress and other intellectual property on websites and other social media." ECF No. 1 at 9.

Plaintiff alleged that "Defendants advertised their products on their respective

websites, representative/marketing/distribution websites, Facebook, You Tube and on other social media, which were viewed online by consumers throughout the United States," and even though Plaintiff contacted these platforms to discover the legal names of Defendants engaged in the infringing conduct, the platforms refused to disclose those names and continues to permit the infringing conduct. ECF No. 1 at 10.

Plaintiff filed suit against the unnamed Defendants on August 20, 2026. ECF No. 1. On the same day, Plaintiff filed the instant *ex parte* motion. ECF No. 2. In support of its motion, Plaintiff submits: (1) a proposed order outlining Plaintiff's requested relief, ECF No. 1-1; (2) certificate of interested persons, ECF No. 2-2; (3) certificate of conference, ECF No. 2-3; and (4) Tenola Hightower's declaration, ECF No. 2-4.

On September 22, 2026, the Court ordered Plaintiff to provide an upcoming event date, as suggested by his proposed order, or otherwise explain why such a date was unnecessary. ECF no. 8. Plaintiff responded that the upcoming event date is November 22, 2026. ECF No. 9.

## II. PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER.

Plaintiff moves for relief under Federal Rule of Civil Procedure 65(b). ECF No. 2. The "Federal Rules of Civil Procedure plainly state that a court may issue a temporary restraining order without notice to the other party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." *Alexander v. Montgomery Cnty. Cmty. Supervision & Corr.*, No. 4:25-CV-4209, 2026 WL 559781, at *n.2 (S.D. Tex. Feb. 18, 2026), *adopted sub nom. Alexander v. Montgomery Cnty. Cmty. Supervision & Corr. Dep't*, No. CV H-25-4209, 2026 WL 564300 (S.D. Tex. Feb. 27, 2026) (citing Fed. R. Civ. P. 65(b)(1)).

A TRO is "a highly accelerated and temporary form of preliminary injunctive relief, which may be granted without notice to the opposing party or parties." *Alexander*, 2026 WL 559781, at *1 (quoting *Cotton v. Tex. Express Pipeline, LLC*, No. 6:16-cv-453, 2017 WL 2999430, at *1 (W.D. Tex. Jan. 10, 2017)). "To obtain a TRO, a plaintiff must establish that (1) there is a substantial likelihood that it will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs whatever damage the proposed injunctive relief would cause the defendant; and (4) the granting of the injunction is not adverse to the public interest." *Id.* (citing *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974))). "[I]f [the movant] fails to meet any of the four requirements, the court cannot grant the TRO or preliminary injunction."

*Castro v. City of Grand Prairie*, No. 3:21-CV-885-L, 2021 WL 1530303, at *1 (N.D. Tex. Apr. 19, 2021).

**A. Plaintiff Established a Likelihood of Success on the Merits.**

Plaintiff brings claims for trademark infringement pursuant to 15 U.S.C. § 1114, and unfair competition and false designation under 15 U.S.C. § 1125, ECF No. 1 at 11.

To prevail on a claim for trademark infringement under the Lanham Act, Plaintiff must show: "(1) [it] possess[es] a legally protectable trademark, and (2) [Defendant's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *BVE Brands, LLC v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 1-22-CV-00278-RP, 2023 WL 5108960, at *3 (W.D. Tex. June 23, 2023), *adopted sub nom. BVE Brands, LLC v. Yiwu Dingyi E-Commerce Co., Ltd.*, No. 1:22-CV-278-RP, 2023 WL 5116551 (W.D. Tex. Aug. 9, 2023) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017)). "A 'likelihood of confusion' means that confusion is not just possible, but probable." *Id.* (quoting *Mission Pharmacal Co. v. Virtus Pharmaceuticals, LLC*, 23 F.Supp.3d 748, 759 (W.D. Tex. 2014)).

"[T]he same elements also apply to establish a claim for false designation of origin under the Lanham Act, as well as unfair competition under 15 U.S.C.

§ 1125(a) . . . .” *Energy Alchemy, Inc. v. Nambo*, No. 3:23-CV-00815-K, 2025 WL 2625586, at *3 (N.D. Tex. Sept. 10, 2025) (citing *Springboards to Education, Inc. v. Kipp Foundation*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018)); *Primesource Bldg. Prods., Inc. v. Hillman Grp., Inc.*, 2015 WL 11121367, at *3 (N.D. Tex. Mar. 31, 2015) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010)); *see also GS Holistic, LLC v. Kenny Gee's LLC*, No. 4:23-CV-00628-O, 2024 WL 386157, at *4 (N.D. Tex. Jan. 8, 2024), *adopted*, No. 4:23-CV-00628-O, 2024 WL 384930 (N.D. Tex. Feb. 1, 2024 (“[T]he Court's likelihood of confusion analysis below for Plaintiff's federal trademark infringement claim applies also to Plaintiff's federal claims for unfair competition.”) (quoting *Firebirds Int'l, LLC v. Firebird Rest. Group, LLC*, 397 F. Supp. 3d 847, 859 (N.D. Tex. 2019); citing *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *Matrix Essentials, Inc. v. Emporium Drug Mart*, 988 F.2d 587, 592 (5th Cir. 1993) (“As with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are ‘likely to cause confusion.’”)). Likewise, “[t]he elements of a claim for false designation of origin parallel those of a claim for trademark infringement, and the same evidence establishes both claims.” *GS Holistic*, 2024 WL 386157, at *4 (quoting *Choice*

*Hotels Int'l, Inc. v. Cheema Invs., LLC*, No. 3:11-CV-01762-O, LLC, 2023 WL 12125998 at *4 (N.D. Tex. Feb. 20, 2013)).[2]

### *1. Plaintiff Owns Valid and Protectable Trademarks.*

Plaintiff alleged that it owns valid and protectable United States Trademarks:

> To ensure that Plaintiff's rights were protected, Plaintiff filed trademarks for 83s®, Registration No. 3988183, 84s®, Registration No. 3988184, SWANGAS®, Registration No. 3988199, GOT SWANGAS? ®, Registration No. 3988198, POKE®, Registration No. 4238112, SUPER POKE®, Registration No. 3882951, EXTREME POKE,® Registration No. 3882953, ELBOW,® Registration No. 3988200, and SLAB CULTURE®, Registration No. 3646070. On October 7, 2016, Plaintiff obtained registration for its trade dress and new product design, Registration No. 5204602. Together the foregoing comprises TWW's Marks. . . . In addition to the registration of its trade dress, Plaintiff's wheels are also known as and sold under its various trademarks including POKE®, SUPER POKE®, EXTREME POKE®, 83S®, 84S®, SWANGAS®, ELBOW®, SWANG®, GOT SWANGAS®, "ORANGATANG POKE®" and "GIRAFFE POKE®" wheels. The foregoing registrations are valid, subsisting, and in full force and effect. Additionally, Texan Wire Wheels has common law trademark rights in the TWW unregistered trademarks for use in connection with products and services in the vehicle wheels' field and other related fields. Texan Wire Wheels, LLC is also the owner of and has registered and common law trade dress rights in and to the subject of Trademark Registration No. 5,204,602, consisting of a three-dimensional configuration of a vehicle wheel featuring an arrangement of wire spokes emanating from a tire hub whereby one long and straight spoke is placed in-between two short and slightly curved spokes in a repeated pattern around the wheel. Texan Wire Wheels, LLC is the

---

[2] "To prevail on a false designation of origin, Plaintiff must prove '(1) The defendant made a false or misleading statement of fact about its product or service; (2) The statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) The deception was material, in that it was likely to influence consumers' purchasing decisions; (4) The product or service is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.'" *BVE Brands*, 2023 WL 5108960, at *3 (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).

> exclusive owner of all the trademark rights in and to Texan Wire Wheels, LLC'S trademarks (as referenced above and outlined below) for various goods and services related to vehicle wheels.

ECF No. 25 at 4, 6, 30–46; *see also* Hightower Decl., ECF No. 2-4 at 3.

"Proof of registration with the United States Patent and Trademark Office (USPTO) is 'prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services.'" *JTH Tax LLC v. Brown*, No. 3:24-CV-02083-K-BT, 2025 WL 2524304, at *5 (N.D. Tex. Sept. 2, 2025) (quoting *Amazing Spaces, Inc.*, 608 F.3d at 235–36; citing *Choice Hotels*, 2013 WL 12125998, at *3 (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998)) ("Proof of the registration of a mark with the U.S. Patent and Trademark Office meets the threshold requirement that the mark be legally protectable from infringement.")).

As shown above, Plaintiff's Marks are registered with the USPTO. Therefore, "the Court concludes that Plaintiff has the exclusive right to use the registered trademarks in commerce with respect to the specific goods or services." *See id.* (citing *Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Grp., LLC*, 2023 WL 349790, at *5 (N.D. Tex. Jan. 20, 2023) (finding that plaintiff meets the first element of trademark infringement because "both of [p]laintiff's trademarks are registered with the USPTO"); *Choice Hotels*, 2013 WL 12125998, at *3 (finding that plaintiff "has sufficiently supported its allegation that it has ownership of a legally protectable

mark" because plaintiff showed that the mark is registered with the USPTO); *Roto-Rooter Corp. v. Garcia*, 2021 WL 327569, at *3 (E.D. Tex. Feb. 1, 2021) (concluding that, because "it is uncontroverted that [p]laintiff owns a number of federally registered trademarks for the ROTO-ROOTER service mark," the "remaining question is whether [p]laintiff has shown [d]efendants' use of the trademark creates a substantial likelihood of confusion" and not conducting further analysis)).

***2. Likelihood of Confusion Exists.***

"The Fifth Circuit has provided eight non-exhaustive 'digits of confusion' for courts to consider in determining whether a likelihood of confusion exists: (1) the type of trademark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) any evidence of actual confusion; and (8) the degree of care exercised by potential purchasers." *BVE Brands*, 2023 WL 5108960, at *3 (quoting *Streamline Prod. Sys.*, 851 F.3d at 453). "No digit is dispositive, and the digits may weigh differently from case to case, depending on the particular facts and circumstances involved. In addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis." *GS Holistic*, 2024 WL 386157, at *7

(citing *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 80 F.4th 607, 621 (5th Cir. 2023) (internal citations and quotations omitted)).

Plaintiff demonstrates that unidentified bootleggers have used and will continue to use counterfeit marks in the production and sale of their unauthorized merchandise and those counterfeit marks are confusingly similar to Plaintiff's Marks. ECF Nos. 1 at 15–27; 47; 2-4 at 5–6 ("Defendant Bootleggers are selling their Infringing Merchandise in this District and at other online marketplaces. Defendants are using the same marks as Plaintiff and selling their unlawful products to an audience of millions online."); 6–7 ("Infringing Merchandise is an inferior imitation. The consumers are disappointed and, in their confusion as to the source of the Infringing Merchandise, blame Plaintiff. This affects future legitimate sales and also tends to create a negative feeling by the consumers directed against the Plaintiff, which may in turn cause decreased sales for Plaintiff. Indeed, Plaintiff's employees have now frequently observed the same individuals selling Infringing Merchandise online and the unsuspecting public requesting the source of supplies.").

Plaintiff and Defendants advertise and sell products on overlapping or similar outlets, such as trade shows and online shops. ECF Nos. 1 at 15–27; 2-4 at 5–6 ("Defendant Bootleggers are selling their Infringing Merchandise in this District and at other online marketplaces. Defendants are using the same marks as Plaintiff and selling their unlawful products to an audience of millions online."). Finally, nothing

suggests that Defendants have any right to use the Marks and instead appear to be engaged in intentional copying. ECF No. 2-4 at 6 ("The Defendant Bootleggers are not bound by contract to provide first-quality apparel and graphic designs or vehicle wheel products. Further, the Defendant Bootleggers can drastically undersell Plaintiff, a legitimate merchandiser, because, unlike Plaintiff, Defendant Bootleggers have no obligation to pay Plaintiff royalties and/or pay any part of their sales to the event venue, employees who create and sell legitimate merchandise or online hosts.").

Plaintiff sufficiently established likelihood of confusion and therefore, has demonstrated a likelihood of success on his Lanham Act claims. *See Ceremony of Roses Acquisition LLC v. John Does 1-100*, No. SA-26-CA-01704-XR, 2026 WL 896234, at *3 (W.D. Tex. Mar. 20, 2026).

**B. Plaintiff will Likely Suffer Irreparable Harm if an Injunction is not Granted.**

"The Lanham Act provides that 'upon a finding of a likelihood of success on the merits,' a plaintiff 'shall be entitled to a rebuttable presumption of irreparable harm.'" *Id.* (quoting 15 U.S.C. § 1116(a)). "Even without the presumption, there is still likely irreparable harm at stake. Consumers would be misled by the knock-off goods, resulting in both lost sales (which damages could not remedy given the bootleggers' evasive tactics) and reputational harm to Plaintiff regarding the quality of their merchandise." *See id.* (quoting *Ceremony of Roses Acquisi-Tion LLC v.*

*Does*, No. 4:26-CV-285 MAL, 2026 WL 626769, at *3 (E.D. Mo. Mar. 5, 2026)); ECF No. 2-4 at 6–7 ("Infringing Merchandise is an inferior imitation. The consumers are disappointed and, in their confusion as to the source of the Infringing Merchandise, blame Plaintiff. This affects future legitimate sales and also tends to create a negative feeling by the consumers directed against the Plaintiff, which may in turn cause decreased sales for Plaintiff. Indeed, Plaintiff's employees have now frequently observed the same individuals selling Infringing Merchandise online and the unsuspecting public requesting the source of supplies.").

Further, "traditional legal remedies are impossible to calculate or collect in these cases" because these bootleggers appear online or at events and trade shows, operate without identification or record-keeping, and are likely to destroy Infringing Merchandise and related evidence after receiving notice of these proceedings." *See* ECF No. 2-4 at 5 ("Merchandisers of Plaintiff's stature have recurring and ongoing problems with individuals who sell infringing merchandise near, at and sometime inside each car show, trade show or online venue."); 6 ("Defendant Bootleggers can drastically undersell Plaintiff, a legitimate merchandiser, because, unlike Plaintiff, Defendant Bootleggers have no obligation to pay Plaintiff royalties and/or pay any part of their sales to the event venue, employees who create and sell legitimate merchandise or online hosts. This ability to undersell the legitimate Authorized Products and Merchandise is also enhanced by the fact mentioned above that

Defendant Bootleggers do not collect or pay sales or other taxes."); *Ceremony of Roses Acquisition*, 2026 WL 896234, at *3 ("Moreover, traditional legal remedies are impossible to calculate or collect in these cases because these sellers appear only at the concerts, operate without identification or record-keeping, and are likely to destroy Infringing Merchandise and related evidence after receiving notice of these proceedings.").

Accordingly, Plaintiff will likely suffer irreparable harm if an injunction is not granted.

**C. The Balance of Equities Favors an Injunction.**

Here, Plaintiff spent substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with its Marks. ECF No. 2-4 at 4 ("Plaintiff spends a great deal of care, time and money in developing its Authorized Products and Merchandise bearing Plaintiff's Trademarks including to make sure they are high quality and are appropriate to their image."). Plaintiff likely will suffer substantial losses and damage to its reputation as a result of Defendants' alleged activities. ECF No. 2-4 at 6–7 ("Infringing Merchandise is an inferior imitation. The consumers are disappointed and, in their confusion as to the source of the Infringing Merchandise, blame Plaintiff. This affects future legitimate sales and also tends to create a negative feeling by the consumers directed against the Plaintiff, which may in turn cause decreased sales for Plaintiff. Indeed, Plaintiff's employees have now

frequently observed the same individuals selling Infringing Merchandise online and the unsuspecting public requesting the source of supplies."). The potential harm to Defendants in restraining their trade in likely counterfeit and infringing goods is outweighed by the potential harm to Plaintiff, its reputation, and its goodwill, if such relief is not issued. Therefore, the balance of hardships tips in favor of Plaintiff. *See CRYPTON FUTURE MEDIA, INC. v. THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A*, No. 1:26–CV–684–DAE, 2026 WL 1954892, at *5 (W.D. Tex. Apr. 7, 2026) ("Plaintiff spent substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Crypton Marks. Plaintiff likely will suffer substantial losses and damage to its reputation as a result of Defendants' alleged activities. The potential harm to Defendants in restraining their trade in likely counterfeit and infringing branded goods is outweighed by the potential harm to Plaintiff, its reputation, and its goodwill, if such relief is not issued. The balance of hardships tips in favor of Plaintiff.").

**D. An Injunction Would Serve The Public Interest.**

"Fourth and last, a TRO serves the public interest by preventing consumer confusion and combating deceptive behavior that undermines our nation's system of intellectual property protections." *Ceremony of Roses Acquisition*, 2026 WL 896234, at *3 (quoting *Ceremony of Roses Acquisi-Tion*, 2026 WL 626769, at *3).

Here, a TRO would serve the public interest. "The public has an interest in not being deceived or confused as to the origin, source, or sponsorship of trademarked products." *Id.* (citing *Best W. Int'l, Inc. v. R & Z Arastu Fam. Ltd. P'ship*, No. SA-07-CA-902-OG, 2007 WL 9710714, at *2 (W.D. Tex. Dec. 10, 2007) (noting that the unauthorized use of plaintiff's marks likely deceived the public and was a disservice to the public interest)); *CRYPTON FUTURE MEDIA*, 2026 WL 1954892, at *5 ("The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests and protect the public from being defrauded by the alleged palming off of counterfeit goods as Plaintiff's genuine goods.").

"The public also has a strong interest in protecting the rights of a trademark holder." *Ceremony of Roses Acquisition*, 2026 WL 896234, at *3 (citing *Best W. Int'l*, 2007 WL 9710714, at *2). "The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests and protect the public from being defrauded by the alleged palming off of counterfeit goods as Plaintiff's genuine goods." *See id.*

**E. Plaintiff is Entitled to *Ex Parte* Relief.**

Plaintiff satisfied the traditional principles governing preliminary relief and the additional requirements applicable to requests for *ex parte* relief under Fed. R. Civ. P. 65(b).

Plaintiff's counsel explained:

> this action is commenced against John and Jane Doe defendants because those Defendant Bootleggers cannot be positively identified until an event (when and where they are actually served) or if an online infringement, unless and until an ISP, online market or social media host discloses the true identity of the infringers, which many are reticent to do without an order. As a general rule, individual bootleggers are well aware of the illegal nature of their activities. They conceal their presence and their intentions online or until immediately prior to an event. Even when served, they frequently either refuse to identify themselves or provide fictitious names and addresses.

ECF No. 2-3 at 5. Plaintiff's counsel further explains that "the relief is warranted; the online infringement is continuing. The car show and trade shows are continuing." ECF No. 2-3 at 6. Accordingly, "Plaintiff stands to suffer immediate and irreparable injuries if notice is required, and its counsel has certified in writing that notice cannot be given under these circumstances." *See Ceremony of Roses Acquisition*, 2026 WL 896234, at *4.

### F. Plaintiff Should Post Bond and, if Adopted, the Court Hear Whether a Preliminary Injunction Should Issue.

The Court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff's counsel attests that "because Defendants have no legitimate rights, pay no taxes and no licensing fees on infringing products that are sold at a nominal cost, the bond set in these matters should be nominal, *i.e.*, under $2,500.00." ECF No. 2-3 at 6. So, Plaintiff requests

that this Court require it to post a bond of no more than $2,500. ECF Nos. 2-1 at 3; 2-3 at 6. The Court agrees that a $2,500 bond would be appropriate.

If the district judge adopts the Court's recommendations, the Court will hold a hearing to determine whether to grant a preliminary injunction. *See* Fed. R. Civ. P. 65(b)(3) ("If the [temporary restraining] order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order."). At this hearing, Plaintiff "shall be prepared to show cause why a preliminary injunction should be issued. If Plaintiff fails to do so, 'the [C]ourt must dissolve the [restraining] order.'" *Walker v. Doe*, No. 6:24-CV-00633-ADA, 2025 WL 1502634, at *6 (W.D. Tex. Jan. 3, 2025) (quoting Fed. R. Civ. P. 65(b)(3)). Defendants shall be prepared to show cause why they should not be preliminarily enjoined throughout the pendency of this action and may also file a motion to dissolve or modify the TRO in in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure or contact the Court to modify the time or date of the scheduled hearing once set. *See Walker*, 2025 WL 1502634, at *6.

## III. PLAINTIFF IS ENTITLED TO A SEIZURE ORDER.

"*Ex parte* seizure orders are not automatic. The Act imposes several

requirements on an applicant. To obtain an *ex parte* seizure order, an applicant must give notice of its application to the United States attorney for the judicial district in which such order is sought." *Ceremony of Roses Acquisition*, 2026 WL 896234, at *4 (citing 15 U.S.C. § 1116(d)(2)). "An applicant must also base their application on an affidavit or verified complaint, [15 U.S.C. § 1116](d)(3), and include a description of the matter to be seized and its location, the seizure date, the security required, and the post-seizure hearing date, [15 U.S.C. § 1116](d)(5)." *Id.*

The Court "may issue a seizure order if it clearly appears from specific facts that '(i) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of Section 32 of [the Lanham] Act (15 U.S.C. § 1114); (ii) the applicant has not publicized the requested seizure; (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the matter to be seized will be located at the place identified in the application; (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the counterfeiter; and (vii) the person against whom seizure would be ordered . . . would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.'" *Id.* (quoting 15 U.S.C. § 1116(d)(4)(B)).

In the instant case, Plaintiff satisfies § 1116's requirements. ECF No. 2. First, Plaintiff asserted that Defendants reveal themselves "just long enough to sell their Infringing Merchandise" and after their merchandise is sold, "they will promptly disappear and retreat behind their wall of anonymity provided by online websites and social media outlets," and "[e]ven if Defendants received notice and were served with a proposed temporary restraining order, it is highly unlikely that they would voluntarily comply and not sell their goods." ECF No. 2 at 20; 2-3 at 5–6 ("individual bootleggers are well aware of the illegal nature of their activities. They conceal their presence and their intentions online or until immediately prior to an event. Even when served, they frequently either refuse to identify themselves or provide fictitious names and addresses. These Doe defendants do exist and they are specific people – they are the ones that appear at the car shows, trade shows or online, sell their spurious goods and then disappear.").

Second, nothing in the record demonstrates that Plaintiff has publicized the requested seizure.

Third, Plaintiff possesses an exclusive right to the Marks and Defendants are likely to continue selling unauthorized merchandise. ECF No. 2-3 at 7.

Fourth, Plaintiff will suffer an immediate and irreparable injury without the seizure order because Plaintiff has demonstrated that unauthorized sales of lower-quality goods harms Plaintiff's reputation and value of Plaintiff's Mark and because

of how Defendants do business, to sell merchandise but not identify themselves or show up to Court. ECF No. 2-4 at 7 ("not only does the sale of this Infringing Merchandise violate Plaintiff's exclusive rights, but also causes the general public to be adversely affected and irreparably harms and tarnishes the Plaintiff's reputation for excellence and integrity in the legitimate Authorized Products and Merchandise."). "Having an *ex parte* order that allows Plaintiff to seize the bootlegged goods is the most Plaintiff expects to recover from these unknown entities." *See Ceremony of Roses Acquisition*, 2026 WL 896234, at *4.

Fifth, in the proposed order, Plaintiff proposes authorizing law enforcement to:

> seize and impound any and all Infringing Merchandise bearing any or all of Plaintiff's Trademarks which Defendants attempt to sell or are holding for sale, including any from any carton, container, vehicle, or other means of carriage in which the Infringing Merchandise is found from three (3) hours before to three (3) hours after any promotional event, pop-up show, trade show, car show and concert within a three (3) mile vicinity of the halls, stadiums or arenas at which said shall be held, including but not limited to in connection with the promotional event, pop-up show, trade show, car show and concert to be held at the Reliant Arena on November 22, 2026 in Houston, Texas.[3]

ECF No. 9-1 at 4. In Sixth and Seventh, Defendants are not authorized to sell their infringing merchandise, "which they could move to another location and offer for

---

[3] Once the Defendants have been served at the event held in Houston, the Court will acquire personal jurisdiction over them. *See Ceremony of Roses*, 2026 WL 896234, at *5 (citing Fed. R. Civ. P. 4).

sale again if not confiscated, and because any inadvertent seizure of merchandise that is not infringing may be remedied in a subsequent hearing in this case." *See* ECF No. 2-3 at 4 ("Defendants will use every effort to transfer, hide or destroy the Bootleg Merchandise if such merchandise is not subject immediately to an *ex parte* seizure order."); *Ceremony of Roses Acquisition*, 2026 WL 896234, at *4.

Based on the briefing and supporting declarations, the Court should grant Plaintiff's *ex parte* request for a seizure order under 15 U.S.C. § 1116.

## IV. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's motion be **GRANTED** and the district judge enter Plaintiff's amended proposed order.[4] ECF Nos. 2, 9-1.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

---

[4] This form is consistent with other TROs entered in the Southern District of Texas. *See Araca Merchandise, L.P. v. Does 1-100 et al.*, Cause No. 4:16-cv-01194, ECF No. 11 (S.D. Tex. May 5, 2016) (Miller, J.); *F.E.A., Inc. v. Does 1-100 et al.*, Cause No. 4:14-CV-1389, ECF No. 8 (S.D. Tex. May 20, 2014) (Ellison, J.); *Bravado International Group Merchandising Service, Inc. v. Does 1-100 et al.*, Cause No. 4:22-CV-00124, ECF No. 11 (S.D. Tex. Jan. 19, 2022) (Bennett, J.); *Merch Traffic LLC v. Does 1-100 et al.*, Cause No. 4:22-CV-01361, ECF No. 10 (S.D. Tex. May 2, 2022).

Signed on October 4, 2026, at Houston, Texas.

Dena Palermo

**Dena Hanovice Palermo**
**United States Magistrate Judge**